IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DEBROA HOWARD,** | CASE NO. 1:12CV0073 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GREG WHITE |
| **MICHAEL J. ASTRUE,** **Commissioner of Social Security,** | |
| Defendant. | MEMORANDUM OPINION & ORDER |

Plaintiff Debroa Howard ("Howard") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Howard's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is vacated and the case remanded for further proceedings consistent with this opinion.

## I. Procedural History

On September 5, 2003, Howard filed an application for DIB alleging a disability onset date of August 1, 2002, and claiming that she was disabled due to bipolar disorder and carpal tunnel. (Tr. 90-92; 121.) Her application was denied both initially and upon reconsideration. Howard timely requested an administrative hearing.

On July 5, 2006, an Administrative Law Judge ("ALJ") held a hearing during which Howard, represented by counsel, and an impartial vocational expert ("VE"), testified. (Tr. 959.) On December 14, 2006, the ALJ found Howard was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 389.) The Appeals Council,

however, remanded for numerous reasons.[1] (Tr. 392-394.) Another ALJ consolidated Howard's remanded claim with a subsequent SSI claim she filed on January 23, 2008, and held a hearing on December 10, 2008. (Tr. 936.) Howard, represented by counsel, and an impartial VE, testified. *Id*. On March 25, 2009, the ALJ found Howard was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 756-758.) The Appeals Council, however, again remanded.[2] (Tr. 760-762.)

On September 13, 2010, the same ALJ held a third hearing during which Howard, represented by counsel, and both a VE and Medical Expert ("ME") testified. (Tr. 911-912.) On October 15, 2010, the ALJ found Howard was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 36-42.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.[3] (Tr. 9-12.)

## II. Evidence

### *Personal and Vocational Evidence*

Age 41 on the alleged disability onset date, and 49 at the time of the third administrative

---

[1] The Appeals Council found that the ALJ's decision did not satisfy the requirements of the SSA regulations for the following reasons: (1) reports of two consultative evaluations requested by the ALJ at the hearing may not have been proffered to claimant; (2) the ALJ may have ignored evidence regarding whether limitations such as crawling and stooping significantly eroded the unskilled, sedentary occupational base; (3) additional evaluation required as to her mental impairments; (4) unexplained Global Assessment of Functioning ("GAF") of 43, which indicated a serious impairment in social and occupational functioning; (4) unresolved conflict regarding the VE's testimony and his finding that Howard could perform as a food and beverage order clerk. The ALJ was ordered to correct these deficiencies as well as obtain evidence from a Medical Expert. (Tr. 392-393.)

[2] The Appeals Council concluded that the second decision did not satisfy the requirements of the SSA regulations because the ALJ failed to (1) obtain evidence from a ME, as directed; (2) properly assess obesity as a severe impairment; and, (3) address a conflict based upon the VE's testimony and the ability to perform work as a surveillance system monitor and a dispatcher. (Tr. 760-761.)

[3] The Appeals Council noted that Howard had filed a further claim for disability beginning January 3, 2011, which was approved. (Tr. 10; 16-22.)

2

hearing, Howard is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563 & 416.963. (Tr. 41.) Howard has at least a high school education and past relevant work as a cashier, seamstress, hostess and fast-food worker. (Tr. 41.)

### *Medical Evidence Regarding Physical Impairments*

From July 12, 2004 through July 23, 2004, Howard was in Huron Road Hospital for deep vein thrombosis, asthma, carpal tunnel syndrome, and bipolar disorder. (Tr. 726-731.) She was discharged in stable condition with a good prognosis. (Tr. 727.) In November, 2004, Howard was diagnosed as having post-phlebitic syndrome. (Tr. 254-256.) She attended physical therapy sessions in April and May, 2005. (Tr. 238, 243.) The therapist advised Howard to wear a compression stocking during the day and to wrap her leg at night for swelling, if needed. (Tr. 238.)

Howard was also diagnosed with degenerative disc disease several times throughout the relevant time period. (Tr. 321-325; 437-439; 445, 452, 656-657; 852-855.)

On June 10, 2010, Howard Smith, M.D., diagnosed fibromyalgia, but it was determined to be stable. (Tr. 888-889.)

### *Consultative Examinations regarding Physical Impairments*

On September 19, 2006, Michael Harris, M.D., performed a consultative examination assessing Howard with "chronic myofascial pain secondary to fibromyalgia as well as bipolar disorder." (Tr. 336-338.) Dr. Harris noted that Howard could lift up to 10 to 15 pounds occasionally. (Tr. 338.) He also found restrictions in stooping or bending, but none in standing or sitting. *Id.*

On February 17, 2010, Kimberly Togliatti-Trickett, M.D., performed a consultative examination diagnosing the following: obesity, carpal tunnel syndrome, bipolar disorder, ulcerative colitis, fibromyalgia, low back pain, ankle/foot pain, asthma, and lymphedema. (Tr. 868-874.) The doctor concluded that Howard could sit without difficulty, stand and walk 30 minutes to one hour at a time, and could lift and carry up to ten pounds occasionally. (Tr. 870.) The doctor further found that Howard ambulated with a straight cane, could stand/walk a maximum of two hours in an eight-hour day, could occasionally reach, balance, stoop, kneel,

crouch and crawl. (Tr. 875-878.) Dr. Togliatti-Trickett also noted that Howard could only occasionally reach in all directions and could not perform activities such as shopping, travel without a companion for assistance, walking a block at a reasonable pace, using standard public transportation, or climbing a few steps at a reasonable pace with the use of a handrail. (Tr. 877, 880.)

### *Hearing Testimony*

At the hearing, Howard testified as follows:

- After earning her GED, Howard took some college courses to become a medical secretary, but never used those skills. (Tr. 916-917.)

- She last worked in 2002 at a fast-food restaurant. (Tr. 917.) She quit the job because she had trouble focusing. *Id.*

- She was hospitalized in November, 2002, due to a manic episode occurring after she stopped taking her medication. (Tr. 917-918.) The episode caused depression, hallucinations, paranoia, and thoughts of harming others. (Tr. 918-919.)

- Howard is 5'1" and weighs about 289. (Tr. 920.)

- She is being treated for bipolar disorder, fibromyalgia, deep vein thrombosis, and back pain, and is currently prescribed Lithium, Trazodone, and Savella. (Tr. 919-921.) These medications cause weight gain. (Tr. 920.)

- She can sit for about thirty minutes, before she has to stand up, and she can stand for about fifteen minutes before she would have to sit down, and she can walk for about fifteen minutes. (Tr. 921-922.) In 2002, she could perform these functions a little longer, but she would not have been able to sit for an hour or stand for forty-five minutes. (Tr. 922.)

- She does not get along well with people as she becomes easily frustrated and irritated. *Id.*

- She has little patience for reading or watching television. *Id.*

- She is right-handed and uses a case with that hand. (Tr. 927.)

After reviewing Howard's medical history, the ME diagnosed the following:

lymphedema; past history of thrombophlebitis; long history of low back pain; long history of bipolar disorder; previous alcohol addiction, current status of that is unknown but presumably she is free of that; fibromyalgia; hyperlipidemia; chondromalacia patella, which just means wearing of the cartilage behind the kneecap; and, obesity. She has been treated for her low back pain with multiple different types of medication injections and some other means of relief. She has been treated chronically for her bipolar disorder and has been relatively stable recently according to a psychological test done in 2010 by [Dr. Pickholtz]. He considered her in remission from her depression. He also says that she has a

> personality disorder related to passive, aggressive and addictive features, physical complaints related to fibromyalgia and carpel tunnel, psycho social stresses, personality issues and other psycho social stressors. Her most recent visit to the physicians at Heron [sic] Hospital was dated 6/10/2010. At that time she was complaining of multiple muscle pains and low back pain. Any exacerbating factors, any touching of the body line down, the back pain was aggravated by walking or changing from sitting to standing and bending. It was suggested that she continue her present medications and attempt to lose weight to relieve some of her musculoskeletal symptoms. Her medication list was essentially as she has characterized it. And that pretty much brings us up to date.

(Tr. 924-925.) He further testified that none of her impairments, individually or in combination, met or equaled a listing requirement. (Tr. 925.) Regarding Howard's work limitations, the ME opined as follows:

> [A]s she testified, she's able to only walk for 15 minutes at a time and stand for about 15 to 30 minutes. She says she can sit for 30 minutes but I frankly think that she can sit longer than that. She should be able to lift up to 10 pounds, can carry 10 pounds. She needs a cane to ambulate. She should be able to reach, handle, finger and push and pull as long as it's less than 10 pounds. I would think she could operate foot controls. I wouldn't suggest that she do a lot of stair climbing. Never climb ladders; balancing, stooping, kneeling, crouching and crawling would probably be prohibited. She has no hearing or visual difficulties and environmental limitations would include unprotected heights, moving mechanical parts, operating a motor vehicle, extreme heat or extreme cold and vibrations would probably be contraindicated. Humidity and wetness shouldn't bother her; dust, odor and fumes other than what would bother anybody else would otherwise not be contraindicated.

(Tr. 925-926.) Additionally, the ME found that because of Howard's back pain, a sit/stand option would be a reasonable restriction. (Tr. 927.)

After the VE described Howard's past relevant work as a cashier, seamstress, and fast-food worker, as well as finding that there were no transferable skills, the ALJ posed the following hypothetical:

> This hypothetical worker is 49 years old, has the equivalent of a high school education, has more than the equivalent of a high school education but no currently relevant vocational training. Exertionally this hypothetical worker is limited to a range of sedentary work, and specifically what I mean by that is that she can lift, carry, push and pull a maximum of 10 pounds but must be able to sit and stand at will. When she is standing or walking this hypothetical worker uses a cane in her right hand, which is her dominant hand. The hypothetical worker is further limited in that she is precluded from using ladders, ropes or scaffolds. She can occasionally use stairs and ramps. She's precluded from tasks requiring her to balance, kneel, stoop, crouch or crawl. * * * She is precluded from exposure to work place hazards such as unprotected heights and unprotected moving machinery. She is precluded from occupational driving. And she is precluded from concentrated exposure to temperature extremes by which I mean temperatures in excess of 85 degrees or less than 32 degrees Fahrenheit. Finally,

5

> she's limited to low stress tasks where there is no more than superficial interaction with supervisors, co-workers or the public. And she is precluded from tasks that require arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety of others.

(Tr. 930-931.) The ALJ also included the requirement that when she is standing she must be supported by a cane or the equivalent, such as a bench. (Tr. 931.) The VE testified that he would consider only one-arm occupations while standing. *Id*. Because of this limitation, the VE identified only two sedentary, unskilled jobs as available -- an inspector, DOT number 669.687-014, (120,000 positions available in the nation, 11,000 in the State of Ohio, and 4,000 in northeast Ohio) and security camera monitor, DOT number 379.367-010, (7,880 in the nation, 269 in Ohio, and 75 in northeast Ohio). After inquiring of the VE whether performance of the inspector position would be a problem for the hypothetical person who uses a cane for balance, counsel suggested to the ALJ that there was in essence only one position, the security camera monitor, available of which there were only 75 local positions. (Tr. 933-934.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[4]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when

---

[4] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Howard was insured on her alleged disability onset date, August 1, 2002, and remained insured through March 31, 2004. (Tr. 36.) Therefore, in order to be entitled to POD and DIB, Howard must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Howard established medically determinable, severe impairments, due to fibromyalgia, obesity, lumbar degenerative disc disease, lymphedema of both legs, and bipolar disorder; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Howard was found incapable of performing her past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Howard was not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular

conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

### VI. Analysis

Howard contends that the hypothetical question did not accurately reflect Howard's limitations. (Doc. No. 15 at 16.) Specifically, even though the ALJ claimed to rely upon Dr. Togliatti-Trickett's finding in calculating the RFC determination (Tr. 40), he ignored the doctor's finding that Howard could only occasionally reach in all directions and could not perform activities such as shopping, travel without a companion for assistance, walking a block at a reasonable pace, using standard public transportation, or climbing a few steps with the use of a handrail. *Id.* at 15-16, *citing* Tr. 875-877. In addition, Howard contends that the ALJ did not

8

consider the VE's entire testimony. *Id*. at 17.

Once it is determined that a claimant does not have the RFC to perform her past relevant work, the burden shifts to the Commissioner to show that the claimant possesses the capacity to perform other substantial gainful activity which exists in the national economy. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Anthony v. Astrue*, 266 F. App'x 451, 460 (6th Cir. 2008) (*citing Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)). "To meet this burden, there must be a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987). The testimony of a vocational expert in response to a hypothetical question may serve as substantial evidence of a claimant's vocational qualifications to perform certain jobs. *Id.* However, the hypothetical question posed to a vocational expert must accurately portray the claimant's physical and mental state. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Griffeth v. Comm'r of Soc. Sec*., 217 Fed. App'x 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *Varley*, 820 F.2d at 779. Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994). If a VE testifies in response to a hypothetical question that sets forth all of the claimant's impairments, his response constitutes substantial evidence for a finding of either disability or nondisability. *See Maziarz v. Sec'y of Health & Human Servs*., 837 F.2d 240, 247 (6th Cir. 1988).

> Here, the hypothetical described the following physical limitations:
>
> Exertionally this hypothetical worker is limited to a range of sedentary work, and specifically what I mean by that is that she can lift, carry, push and pull a maximum of 10 pounds but must be able to sit and stand at will. When she is standing or

9

> walking this hypothetical worker uses a cane in her right hand, which is her dominant hand. The hypothetical worker is further limited in that she is precluded from using ladders, ropes or scaffolds. She can occasionally use stairs and ramps. She's precluded from tasks requiring her to balance, kneel, stoop, crouch or crawl.

(Tr. 930.) The ALJ formulated the RFC as follows:

> The claimant retains the residual functional capacity to do a range of sedentary work (20 CFR 404.1567(b) and 416.967(b)). Specifically, she can lift, carry, push and/or pull a maximum of 10 pounds and must be able to sit or stand at will, in an 8-hour day with normal breaks. She can never use ropes, ladders, or scaffolds and can never balance, stoop, kneel, crouch, or crawl. She can occasionally use stairs and ramps. She must avoid concentrated exposure to temperature extremes (below 32 degrees or above 85 degrees). She is precluded from exposure to workplace hazards and from occupational driving. She is limited to low stress tasks involving no more than superficial interaction with supervisors, co-workers, and the public. She is precluded from tasks that involve arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others.

(Tr. 39.)

After finding that Howard could not perform her past sedentary work, the ALJ found Howard not disabled as follows:

> If Ms. Howard had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rules 201.21 and 201.28. However, Ms. Howard's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.

> Mr. Anderson testified that a hypothetical worker of Ms. Howard's age, education, work experience, and residual functional capacity could work two occupations. These occupations, the relevant Diction of Occupational Titles (DOT) references, and the estimated number of jobs in each occupation are as follows:

| Occupation/DOT | USA | Ohio | Northeast Ohio |
|---|---|---|---|
| Inspector 669.687-014 | 120,000 | 11,000 | 4,000 |
| Security camera monitor 379.367-010 | 7,880 | 269 | 75 |

> These examples are evidence of a "significant number" of jobs (20 C.F.R. §§ 404.1566, 416.966) to which Ms. Howard can be expected to make a successful vocational adjustment. Mr. Anderson's testimony is consistent with the information contained in the Dictionary of Occupational Titles (Social Security Ruling 00-4p).

> Accordingly, applying Medical-Vocational Rules 201.21 and 201.28 as a framework for decision-making, I have concluded that Ms. Howard has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision.

(Tr. 41-42.)

At the hearing, the VE testified that because the ALJ imposed a sit/stand option and that Howard had use of "one extremity," the inspector and security camera monitor positions were the only two jobs that Howard could perform. (Tr. 932-933.) Upon inquiry by Howard's counsel, the VE expressed concern as to whether the inspector job could provide the accommodation necessary for an individual using a cane for balance, as reaching to pick up items could interfere with one's stability. (Tr. 933.) The colloquy between counsel and the VE was as follows:

> Counsel: On that inspector job, Mr. Anderson, so when the person is standing would they – is it just watching something go by or is it actually reaching out and holding–
>
> VE: It would be parts that are on a table or on a work bench and you're looking at it to see if there is any irregularities or –
>
> Counsel: So is it actually picking up the item?
>
> VE: Yes, a small item and then either inspecting it and either approving it or rejecting it.
>
> Counsel: So if balance is a concern for that individual, is balance – well, it's a sedentary occupation but if they're trying to perform it standing and they're holding a cane and if their balance isn't going to be real good are they, you know, are they reaching over and picking something up so that they've got movement or rocking while they're on their feet?
>
> VE: Well, they'd have – yeah, they'd have to be reaching forward to pick things up and I don't know if the cane will provide the accommodation for the balance –
>
> Counsel: The stability.
>
> VE: Right. But, yes, they would be picking things up.

(Tr. 933.) The ALJ ignored this portion of the VE's testimony and did not offer any reason why he did so. An ALJ is obliged to consider both evidence that supports, and evidence that detracts from his ultimate finding. *Dionne v. Heckler*, 585 F.Supp. 1055 (D. Me. 1984). The ALJ cannot merely disregard evidence that does not support his conclusion. *Id*. Further analysis of the VE's testimony is essential in the instant case because only two occupations were identified as available to Howard. If the inspector position, with 4,000 jobs in Northeast Ohio, was removed,

only 75 security camera monitor jobs would remain. The ALJ did not provide an analysis that is sufficiently specific and it is not harmless error in this circumstance.

Under the Regulations, "work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live [s] or in several other regions of the country." 20 C.F.R. § 404.1566(a). There is no bright line boundary separating a "significant number" from insignificant numbers of jobs. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). What constitutes a significant number of jobs is to be determined on a case-by-case basis. *Id.* A court should consider "the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work; and so on." *Id.*; *see also Born v. Sec'y of Health and Human Servs.*, 923 F.2d 1168, 1174 (6th Cir. 1990). These factors are suggestions only; the ALJ is not required to explicitly consider each factor. *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999). The "decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Hall*, 837 F.2d at 275.

Furthermore, courts have refused to find that small numbers of jobs identified by a VE represent a "significant number" of jobs in the economy. *See West v. Chater*, 1997 WL 764507, at *2–3 (S.D. Ohio Aug. 21, 1997) (as a matter of law, 100 jobs in the local economy not significant); *Mericle v. Sec'y of Health and Human Servs.*, 892 F.Supp. 843, 847 (E.D. Tex.1995) (870 jobs in the state of Texas not significant); *Waters v. Sec'y of Health and Human Servs.*, 827 F.Supp. 446, 448–50 (W.D. Mich. 1992) (1,000 jobs in the state of Michigan not significant). The record is unclear as to whether Howard could perform as an inspector. Accordingly, the ALJ's conclusion that a significant number of jobs exist in the economy which Howard could perform was not supported by substantial evidence. *See Lenon v. Apfel*, 191 F.Supp.2d 968, 979 (W.D. Tenn. 2001)

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Howard can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can

reverse the Commissioner's decision and award benefits only if all essential factual issues have been resolved and proof of disability is compelling). When the ALJ misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The case can be remanded for further consideration. The Court remands this matter pursuant to "sentence four" of 42 U.S.C. § 405(g)[5] for explanation and analysis in accordance with federal regulations. Having found remand is necessary, the Court need not consider Howard's argument regarding the accuracy of the RFC. (Doc. No. 15 at 11.).

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is vacated and the case is remanded, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

                                            s/ Greg White
                                            United States Magistrate Judge

Date: October 4, 2012

---

[5] Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. A sentence four remand is a final judgment. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).